**GLACIER GENERAL ASSURANCE COMPANY**

v.

**COMPREHENSIVE CARE CORPORATION.**

**Civ. No. 3-81-600.**

United States District Court, E. D. Tennessee, N. D.

Feb. 10, 1982.

M. Clark Spoden, Nashville, Tenn., for plaintiff.

Charles D. Susano, Knoxville, Tenn., for defendant.

**MEMORANDUM**

ROBERT L. TAYLOR, District Judge.

This is a declaratory judgment action to construe the terms of a liability insurance policy issued by plaintiff, Glacier General Assurance Company to defendant, Comprehensive Care Corporation. Plaintiff is a Montana corporation with its principal place of business in Montana. Defendant is a California corporation with its principal place of business in California. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1332, 2201. The case is before the Court on the parties' cross-motions for summary judgment. The parties have filed stipulations of fact and depositions that have been stipulated as proof.

According to the stipulation of the parties, defendant operated the Comprehensive Alcoholic Rehabilitation Environment Care Unit (Care Unit) at St. Mary's Hospital in Knoxville, Tennessee from July 1978 until June 1980. The Care Unit was engaged in the treatment and rehabilitation of individuals suffering from alcoholism. During this period plaintiff provided personal injury liability coverage to defendant. The policy provided:

COVERAGE P—PERSONAL INJURY LIABILITY

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury (herein called "personal injury") sustained by any person or organization and arising out of one or more of the following offenses committed in conduct of the named insured's business.

. . . .

Group B—The publication or utterance of a liable or slander or of other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy; except publications or utterances in the course of or related to advertising, broadcasting or telecasting activities conducted by or on behalf of the named insured[.]

Stipulation, Ex. A.

John O. Waterbury, an employee of defendant, was director of the Care Unit in January 1980. He was responsible for public relations and maintenance of a high number of patients, among other duties.

On or about January 2, 1980 Deborah Holmes, a general assignment reporter for WBIR–TV, Channel 10, received a press release regarding the Care Unit. WBIR decided to do a news story about the Care Unit. On January 2, 1980 a news crew went to the Care Unit to film the news story. Holmes interviewed Waterbury on camera and the crew acquainted itself with the Care Unit. Holmes then asked Waterbury if one of the patients would agree to be interviewed regarding problems with alcoholism and his experiences at the Unit.

Waterbury contacted James C. Proctor, a patient. Proctor consented to be interviewed if his identity were protected. Waterbury told Holmes of Proctor's agreement. Waterbury told Proctor that WBIR had assured him that Proctor's identity would be concealed. Holmes also told Proctor the camera would be behind him, shooting the back of his head.

The news story was shown on January 2, 1980 on the local six o'clock news along with other news items. The segment was approximately one minute in length. Proctor's identity was not adequately concealed; his family and friends recognized him on television. Proctor sued Comprehensive Care and WBIR for libel, slander, invasion of privacy, and defamation of character in the Knox County Circuit Court. Plaintiff is defending defendant in the state action under a reservation of rights.

Plaintiff first contends that the state action is for breach of contract and not for personal injury. Although Proctor's amended complaint contains a contract theory, the original complaint does state claims that fall within the general policy coverage for libel, slander, defamation, and invasion of privacy. (Complaint, Ex. 1). Plaintiff's first theory is without merit.

Neither party disputes that the news story was a publication "in the course of or related to advertising, broadcasting or telecasting activities." (Defendant's brief 2). The issue is therefore whether the news story was "conducted by or on behalf of the named insured."

The deposition testimony of Waterford discloses that as director of the Care Unit he actively contacted the media to increase public relations for the Unit. (Waterbury 2 dep. 8). This included press releases and phone calls to radio, television, and newspaper personnel. (*Id.*) During this period of time defendant also engaged in paid television advertising. (*Id.* at 19). Defendant spent $2,000 a month the first year of the Care Unit's operation and $1,000 a month the second year for advertising. (*Id.*).

84

Plaintiff contends that because defendant generally solicited media interest in the Care Unit and benefited from the public exposure, the telecast was by or on its behalf. We cannot accept this interpretation of the exclusionary clause.

Words in an insurance contract are to be construed according to their ordinary meaning and against the party using them. *State Farm Mutual Automobile Insurance Co. v. Oliver*, 406 F.2d 409, 410 (6th Cir. 1969). Policy exceptions and limitations are also strictly construed against the insuror. *Universal Life Insurance Co. v. Lillard*, 190 Tenn. 111, 114, 228 S.W.2d 79 (1950). Neither the ordinary meaning of "by or on behalf of" nor interpretations of the words in other contexts supports plaintiff's benefit interpretation.

In *White v. Transit Casualty Co.*, a public liability policy required "notice by or on behalf of the insured" as soon as practicable after an accident. 402 S.W.2d 212, 215 (Tex.Civ.App.—Houston 1966). An attorney representing an uninsured injured party gave notice to the insuror. The court held the notice insufficient stating, "the term 'on behalf of' means someone has given notice who was authorized by the assured (sic) to act for him." *Id.*

In *Lowitt v. Pearsall Chemical Corp.*, an insurance policy excluded coverage for "injury to any person who at the time of sustaining such injury is engaged in the service of and/or acting on behalf of the insured." 242 Md. 245, 219 A.2d 67, 75 (1966). The court construed "on behalf of" to broaden very little the master and servant relationship of the phrase "in the service of another." It held that independent contractors were not "acting on behalf of the insured." *Id.*

A telecast "by or on behalf of" an insured must be subject to his authorization and control and not merely for his benefit or at his suggestion. In this case defendant exercised no direction or control over the decision to film and telecast the news story. (Holmes dep. 4). Waterbury was not involved in the actual filming, production and editing of the story. (Waterbury 2 dep. 22–25). The techniques used in the interview with Proctor and the content of the news story were subject to the editorial judgment of WBIR and its staff. (Holmes dep. 17). It is also significant that defendant did not pay WBIR or its personnel to produce and telecast the news story. (Waterbury 2 dep. 21, 25).

In this case WBIR's telecast or broadcast activities were not conducted by or on behalf of defendant. We therefore find that plaintiff is not released from liability under Coverage P of the policy excepting coverage for "telecasting activities conducted by or on behalf of the named insured."

For these reasons it is ORDERED that defendant's motion for summary judgment be, and the same hereby is, granted. It is further ORDERED that plaintiff's motion for summary judgment be, and the same hereby is, denied. It is further ORDERED that this case be, and the same hereby is, dismissed.

Order accordingly.